HERBERT W. VIRGIN, III AND NANCY VIRGIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Virgin v. Commissioner
Docket No. 8871-88
United States Tax Court
T.C. Memo 1991-63; 1991 Tax Ct. Memo LEXIS 82; 61 T.C.M. (CCH) 1907; T.C.M. (RIA) 91063; February 20, 1991, Filed *82 Decision will be entered under Rule 155. Jerome S. Richman, Edward P. Guttenmacher, Susan Wynne, and John S. Bohatch, counsel for the petitioners. David R. Cohen, counsel for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 16,316 in petitioners' joint Federal income tax for 1984 and additions to tax under section 6653(a)(1) and (2). [1] The issues for decision are whether respondent mailed petitioners a timely notice of deficiency and whether petitioners are liable for the additions to tax. FINDINGS OF FACT Some facts have been stipulated and are so found. Petitioners Nancy and Herbert W. Virgin III were married and timely filed a joint Federal income tax return for 1984. Petitioners resided in Miami, Florida, *83 at the time they filed their petition. Timely Notice of Deficiency
Respondent's records indicate that on April 15, 1988, respondent's service center in Doraville, Georgia, mailed petitioners two identical notices of deficiency with respect to 1984. In order to document all of the notices of deficiency that were being mailed on April 15, 1988, by respondent's Doraville, Georgia, service center, the following procedure was established. First, the notices of deficiency were printed by computer. Each notice of deficiency was assigned a certified mail number from a block of certified mail numbers which the post office had assigned to respondent. Respondent's personnel then prepared certified mail lists (Forms 3624), reflecting the names and addresses of the taxpayers to whom notices of deficiency were to be mailed, the certified mail number of each notice of deficiency, the social security number of the taxpayers to whom the notices of deficiency were to be mailed, and the tax periods at issue. Personnel in the examination processing section of respondent's service center then compared the certified mail lists with the notices of deficiency three separate times to assure that *84 the certified mail numbers, names, addresses, social security numbers, and tax periods reflected on the respective documents matched. This comparison was repeated yet again by personnel from respondent's quality review staff. The notices of deficiency were then placed in envelopes with the certified mail numbers appearing in the windows of the envelopes, and the envelopes were sealed for mailing. Respondent's personnel checked once again to verify that the names, addresses, and certified mail numbers reflected in the windows of the envelopes matched those appearing on the certified mail lists. All notices of deficiency appearing on the same certified mail list were then, on April 15, 1988, grouped together by rubber bands with the appropriate certified mail list and delivered to the post office, and each taxpayer's case file relating to each notice of deficiency was to be stamped with the date of April 15, 1988. At the post office, post office personnel checked the certified mail numbers appearing in the windows of the envelopes with the numbers on the certified mail lists. Postal personnel made a notation of the total number of envelopes received from respondent with each certified *85 mail list and stamped each certified mail list with the date the associated envelopes were mailed. One of respondent's certified mail lists for April 15, 1988, indicates that respondent on April 15, 1988, mailed to petitioners a notice of deficiency for 1984. Also on April 15, 1988, respondent's personnel at the Doraville, Georgia, service center noticed that a number of taxpayer case files inadvertently were not stamped with the April 15, 1988, mailing date, raising a question as to whether notices of deficiency actually had been mailed to those respective taxpayers. Respondent's personnel, therefore, on the same day (namely on April 15, 1988), printed new notices of deficiency with respect to those respective taxpayers, date stamped the taxpayers' case files, and mailed the new notices of deficiency to those respective taxpayers whose case files had not reflected the date stamp. Petitioners' case file apparently was one of the files that on review, did not reflect a date stamp, and on the same day (namely April 15, 1988), a second notice of deficiency was prepared for mailing to petitioners. A new certified mail list was prepared reflecting the new certified mail number of *86 the second notice of deficiency, petitioners' names and address, Mr. Virgin's social security number, and the tax year at issue. Respondent's copies of the two notices of deficiency that were prepared with respect to petitioners for 1984 have printed thereon certified mail numbers 157283 and 157015, respectively. Both certified mail numbers appear on copies of respondent's certified mail lists date stamped by the post office on April 15, 1988. Each certified mail list is initialed by postal personnel and is stamped with a mailing date of April 15, 1988. Petitioners acknowledge receiving the notice of deficiency bearing certified mail number 157283, sometime between April 19 and April 27, 1988. Certified mail numbers on the certified mail lists, Forms 3624, that were prepared by respondent's personnel were not listed sequentially, while certified mail numbers of documents reflected on an alternative form for the certified mail lists, (namely Forms 3877), that also were prepared by respondent's personnel, were listed sequentially. Form 3624 is an Internal Revenue Service form, while Form 3877 is a U.S. Postal Service form. Otherwise, information reflected on Forms 3624 is the same *87 type of information reflected on Forms 3877. Additions to Tax
Mr. Virgin has practiced law for many years. Mr. Virgin's law practice involves civil litigation and does not involve accounting or tax law. Mrs. Virgin has maintained the family's financial records for the past 20 years. In 1984, Mr. Virgin received a lump-sum payment from his law firm in the amount of $ 1,250,000. The entire $ 1,250,000 was deposited into a new account at petitioners' bank, the United National Bank of Miami. The record does not disclose the type of account into which the funds initially were deposited. At the time of depositing the funds into the bank account, Mr. Virgin instructed the bank to invest the funds on his and his wife's behalf in tax-exempt bonds. Contrary to Mr. Virgin's instructions, the bank did not immediately invest the $ 1,250,000. Rather, it held the $ 1,250,000 for approximately four months before investing the funds on petitioners' behalf in tax-exempt bonds. With respect to the four months the bank held the $ 1,250,000 in petitioners' new account, the bank credited petitioners' bank account with interest of $ 32,631. However, although the record is not completely *88 clear as to when the bank made the credit to petitioners' account of the $ 32,631 in interest, the credit apparently was not made in 1984. Throughout 1984 and early 1985, petitioners were not aware that any taxable interest was credited to their new account with respect to the $ 1,250,000. Mrs. Virgin's personal records for 1984 indicated that petitioners' in 1984 earned only $ 372 in interest, and Mrs. Virgin provided this amount to petitioners' accountant for use in preparing petitioners' 1984 Federal income tax return. This amount was reported as interest on petitioners' 1984 return. Petitioners reported interest income of $ 288, $ 548, and $ 338 on their respective 1981, 1982, and 1983 Federal income tax returns. Sometime after April 15, 1985, the date petitioners filed their 1984 Federal income tax return, the United National Bank of Miami mailed to petitioners a Form 1099, Statement for Recipients of Interest Income, with respect to 1984. This was the first time petitioners were informed that they had earned $ 32,631 in interest with respect to the four months in 1984 the bank held petitioners'$ 1,250,000 without investing it per petitioners' instructions. Petitioners *89 immediately sent their accountant the Form 1099 and requested him to take the proper action to report this additional interest income. The accountant, however, never prepared an amended return. OPINION
Timely Notice of Deficiency
Section 6501(a) provides that, "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." Section 6503(a)(1) suspends the running of the three-year statute of limitations on making an assessment from the time a notice of deficiency is mailed to a taxpayer until 60 days after the decision of this Court has become final. Respondent carries the burden of proving by competent and persuasive evidence that the notice of deficiency in a particular case was mailed within the statute of limitations. ; Rules 142(a) and 39. Where the existence of a notice of deficiency is not in dispute and where contrary evidence concerning the date of mailing of a notice of deficiency is absent, a properly completed Form 3877 generally will be sufficient to establish that respondent mailed a notice of deficiency *90 and to establish the date the notice of deficiency was mailed. . As indicated, only minor variations exist between Forms 3624 and Forms 3877. Both forms are certified mail lists prepared by respondent's personnel. They contain the same information, and they are processed in a similar manner. For purposes of section 6503(a), we accord significant weight to a properly filled out Form 3624. , T.C.M. (RIA) 90422, at 2042-90, on appeal (6th Cir., Oct. 9, 1990). Based on the evidence before us in this case, particularly the two Forms 3624 dated April 15, 1988, we hold that at least one of the notices of deficiency was timely mailed to petitioners on April 15, 1988. Additions to Tax
The other issue for decision is petitioners' liability for the additions to tax under section 6653(a)(1) and (2), under which additions to tax are imposed if an underpayment of tax is attributable to negligence. Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person *91 would do under the circumstances. ; ; . In this case, as to amounts shown on information returns, the burden is on petitioners to show that respondent's imposition of the additions to tax is incorrect. ; Rule 142(a); Sec. 6653(g). We find petitioners' testimony to be credible as to the facts surrounding their failure to report the $ 32,621 in interest income on their 1984 Federal income tax return. Petitioners reported all taxable interest income they were aware of at the time they filed their 1984 tax return. They expected the $ 1,250,000 to earn tax-exempt interest. Petitioners were not notified by the bank of any taxable interest earned on the $ 1,250,000 until after their 1984 tax return was filed, at which time petitioners immediately notified their accountant to prepare an amended return. On the particular facts of this case, we conclude that petitioners were not negligent and that no additions *92 to tax should be assessed under section 6653(a)(1) or (2). Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩